## No. 47,479

Connie Lynn Lewis Browning, *Appellant*, v. Etta Tarwater, *Appellee*.

(524 P. 2d 1135)

502

*Hart Workman*, of Topeka, argued the cause, and *Sam A. Crow*, of Crow and Skoog, of Topeka, was on the brief for the appellant.

*Robert L. Roberts*, of Gehrt, Roberts & Rieger, of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by the natural mother of a child from an order denying a motion to terminate the visitation rights granted to a paternal grandmother of the child under the provisions of K. S. A. 38-129 *et seq.* (effective, July 1, 1971), after the adoption of the grandchild by the second husband of the child's mother.

The primary question presented concerns the construction of K. S. A. 38-129 and K. S. A. 59-2278.

On the 21st day of July, 1962, the appellant, Connie Lynn Lewis Browning, was married to Jack H. Lewis. On March 5, 1964, a daughter, Lori Lynn, was born to the couple. On April 19, 1964, Jack H. Lewis, the father of Lori Lynn, died.

Connie Lynn Lewis was married to her present husband, Robert Browning, on the 23rd day of November, 1966. On October 8, 1971, Etta Tarwater, the mother of Jack H. Lewis, deceased, filed a petition in the District Court of Shawnee County, Kansas, requesting visitation rights with Lori Lynn Lewis pursuant to the provisions of K. S. A. 38-129 *et seq.* On May 1, 1972, by order of the district court visitation rights were granted to Etta Tarwater, the paternal grandmother. Thereafter on the 29th of August, 1972, the order granting visitation rights to the grandmother, Etta Tarwater, was amended to give a specific time each week that the rights of visitation could be made. The amended order gave the grandmother the right to take Lori Lynn to her home upon the days of visitation.

On March 6, 1973, Robert Browning, adopted Lori Lynn Lewis at which time her name was changed to Lori Lynn Browning. *No notice of this adoption was given to Etta Tarwater* until after the adoption had been completed.

On April 5, 1973, a motion was filed in the District Court of Shawnee County, Kansas, for an order terminating the rights of visitation granted on May 1, 1972. This motion was denied after a hearing by the trial court on the 2nd day of July, 1973.

The trial court in its letter announcing the decision, which was incorporated in the journal entry, stated:

". . . Our statute, K. S. A. 1971 Supp. 31-129 *et seq.* [38-129] provides for the granting of visitation allowed the plaintiff in this case by the Court and the plaintiff acquired that right of visitation, certainly a valuable right. The question then is very simple. Can such a valuable right be taken from the plaintiff without due process of law. There is no evidence before the Court that there was even a pretense of affording the plaintiff the minimum requirements of due process when the adoption proceeding was had which proceeding the plaintiff contends deprives the plaintiff of a right of visitation as a matter of law. Such a conclusion does violence to basic concepts of justice and therefore is clearly not the law.

"Neither does the Court feel that, based upon the evidence, the best interests of the child require a modification or termination of the order allowing the plaintiff visitation."

The journal entry recited findings of fact consistent with the foregoing and the court overruled the motion to terminate rights of visitation.

The appellant contends under the provisions of K. S. A. 59-2103 she is entitled to all the rights of a natural parent and therefore has full rights to the custody of the adopted child.

Provision is made for adoption proceedings under the probate code. K. S. A. 59-2278 pertains to the procedure after the adoption petition is filed and provides in part:

"The written consents required shall be filed with the petition. Upon the filing of the petition the court shall fix the time and place for the hearing thereon, which shall not be less than thirty (30) days nor more than sixty (60) days from the filing of the petition, which time may be extended by the court for cause. *Notice shall be given to all interested parties,* including, except when the petitioner is a stepparent, the state department of social welfare. . . ." (Emphasis added.)

In 1971 the Kansas Legislature passed the following legislation relating to the visitation rights of grandparents of unmarried minor grandchildren. This legislation is cited as K. S. A. 38-129, 38-130 and 38-131 and provides:

38-129. "If either the father or mother of an unmarried minor child is deceased, the parents of such deceased person may be granted reasonable visitation rights to the minor child during its minority by the district court upon a finding that such visitation rights would be in the best interests of the minor child."

38-130. "An action for reasonable visitation rights of grandparents as provided by this act shall be brought in the county in which the child resides with the surviving spouse, guardian or other person having lawful custody."

38-131. "Costs and attorneys' fees may be awarded to either party as justice and equity may require."

Etta Tarwater, the appellee, contends the failure of Mr. Browning to give notice of the adoption proceedings to her was in direct violation of K. S. A. 59-2278. The question is whether Etta Tarwater, the grandmother, was an interested party within the meaning of the statute and entitled to notice of the adoption proceedings.

For the reasons hereafter assigned we do not think Etta Tarwater, the grandmother, was an interested party in the adoption proceedings and entitled to notice of the pending adoption under the foregoing statute.

Of paramount consideration in construing 38-129, *supra*, is the significance of an adoption under Kansas law. The rights of grandparents, if any, have been considered and discussed in various cases.

Before the turn of the century Justice Brewer speaking for the court in the case of *In re Bullen, Petitioner, &c.*, 28 Kan. 781, said:

". . . Clearly the grandmother has no right to the child; there is on her part no legal obligation to support it, and therefore no legal right to its custody. . . ." (p. 785.)

Numerous cases uphold the proposition that a parent who is able to care for his children and desires to do so, and who has not been found to be an unfit person to have their custody in an action or proceeding where that question is in issue, is entitled to custody as against grandparents or others who have no permanent or legal right to custody. (*Christlieb v. Christlieb*, 179 Kan. 408, 295 P. 2d 658; *In re Vallimont*, 182 Kan. 334, 321 P. 2d 190; and cases cited in these decisions.)

The recent case of *In re Johnson*, 210 Kan. 828, 504 P. 2d 217, held that under the provisions of applicable statutes, K. S. A. 1971 Supp. 59-3014 and K. S. A. 1971 Supp. 59-3002 (3) and decisions of this court, a grandparent is not a natural guardian and has no legal right to a child. However, it was said a grandparent has capacity to maintain an action with respect to the disposition of the custody of a child, where the natural mother was dead and the father's parental rights had been severed by the juvenile court.

K. S. A. 1973 Supp. 59-2103 (effective July 1, 1967) specifies the effect that adoption has upon the right of the natural parents and upon the rights of the adoptive parents. It provides:

"Any child adopted as herein provided shall assume the surname of the person by whom the child is adopted, and, when requested by the person or persons petitioning to adopt said child, the court, in its discretion may change the given name or names of said child. When adopted said child shall be entitled to the same rights of person and property as a natural child of the person thus adopting the child. The person so adopting such child shall be entitled to exercise all the rights of a natural parent and be subject to all the liabilities of that relation. Upon such adoption all the rights of natural parents to the adopted child, including their right to inherit from such child, shall cease, except the rights of a natural parent who is the spouse of the adopting parent."

The foregoing statute was recently considered in *Jones v. Jones,* 215 Kan. 102, 523 P. 2d 743 where the court said:

"The legal situation is, therefore, that the appellants, the birth parents, are strangers or third parties to the child, Jennifer, while the appellees are her parents, and as such, it is they who possess all the parental rights with respect to the child, including the right to custody." (p. 112.)

The adoption of a child creates a status—the domestic relation of parent and child. At the conclusion of the adoption proceeding, all the legal incidents of the natural relation of parent and child attach to the new status, and the child becomes entitled to the same rights of person and property as if it were the child by birth of the person adopting it. It is elementary law that the aim and end of adoption statutes is the welfare of the children. The theory of the adoption statute is that such welfare will be best promoted by giving an adopted child the status of a natural child. (*Bilderback v. Clark,* 106 Kan. 737, 189 Pac. 977.) From the time of the adoption, the adoptive parent is, as far as concerns all legal rights and duties flowing from the relation of the parent and child, the parent of the adopted child. (2 Am. Jur. 2d, Adoption, § 84.)

Public policy demands that an adoption carry with it a complete breaking of old ties. Under the new relation thus created, the adoptive parents are as much entitled to the custody of their adopted child as natural parents are to their natural children. The rights of the adoptive parents are of the same nature and scope as those of a natural parent, subject to the same restrictions as those of natural parents. *Where the adoption statute, as here, gives the adopted child the status of a natural child and frees the natural parents of legal obligations toward it, a court in granting an adoption decree is without authority to include in the adoption decree a grant of*

*visitation privileges to the natural parent or members of the natural parents' family.* ( 2 Am. Jur. 2d, Adoption, § 85. )

The disposition of the issue in the instant case relative to the child is controlled by the adoption. The adoption has the effect of prohibiting Etta Tarwater, the grandmother, from exercising visitation rights because the child, when adopted, has new parents and new grandparents ( K. S. A. 1973 Supp. 59-2103 ).

Under the statute, the adoptive parents ( in this case the adoptive father and the natural mother) are entitled to exercise all of the rights of the natural parents. Thus, whether the natural grandparent, Etta Tarwater, can continue contact with Lori Lynn is a matter within the discretion of the child's mother and her adoptive father.

Under the provisions of K. S. A. 1973 Supp. 59-2102 those parents and agencies required to give consent to an adoption are alternatively enumerated. On those facts in this case Etta Tarwater, the grandmother, is not among those enumerated in 59-2102, *supra*. Under these circumstances there is nothing Etta Tarwater could have done to defeat the adoption by Mr. Browning, the present husband of Connie Lynn. Etta Tarwater's consent for the adoption of Lori Lynn by Mr. Browning was not required. It follows that within the meaning of K. S. A. 59-2278 Etta Tarwater was not an interested party entitled to notice of the adoption.

In our opinion K. S. A. 38-129 was not designed by the legislature to overturn the previously established adoption laws of the State of Kansas, but was enacted and intended to apply subject to the adoption laws. In other words, adoption proceedings properly conducted and accomplished under the probate code override 38-129, 38-130 and 38-131, *supra*.

Language in 38-129, *supra*, and 38-130, *supra*, fortifies our conclusion. The first section says if *either the father or mother* of an unmarried minor child is deceased, the parents of such deceased person may be granted reasonable visitation rights to the minor child. Nothing is said if both the father and mother are deceased, or what the situation is where an adoption of the minor child has been perfected. By 38-130, *supra*, the grandparents are required to bring the action in the county in which the child resides with the *surviving spouse, guardian or other person* having lawful custody. In this section the legislature is again speaking of the surviving spouse in the singular sense and nothing suggests that a situation is contemplated where an adoption of the child has been perfected.

We conclude the provisions of 38-129, *supra,* authorizing the parent of a deceased father of an unmarried minor child reasonable visitation rights to the minor child during its minority upon a finding by the district court that visitation rights would be in the best interests of the minor child, were not intended to have application after the minor child to whom the grandparent was given visitation rights was adopted by a stepparent. If the statute were interpreted otherwise, it would mean that an adoptive parent would be subjected to the influence of a third person concerning his adopted child. This would not be conducive to the best interests of the child. The child of a marriage in which both natural parents are living is not legally subject to visitation privileges by the grandparents. The fact that only one parent is an adoptive parent, as here, does not change the long established relationship between an adoptive parent and the adopted child—that third parties shall not have access to the control of the minor child.

The judgment of the lower court is reversed.

FONTRON, J., dissenting: The court has cavalierly swept from the books a duly enacted statute—and on specious reasoning, in my opinion. In its opinion the court states the question is whether Mrs. Tarwater, the grandmother, was an interested party within the meaning of K. S. A. 59-2278 relating to adoption and was entitled to notice of the adoption proceedings. I submit this has never been the basic question in this lawsuit. Although the trial court emphasized the lack of notice to the grandmother in the adoption proceedings, I maintain the actual question in that court was whether, in the best interests of the child, visitation rights which had previously been awarded the grandmother, her son being deceased, should be terminated. This question, as is shown in the opinion, was answered in the negative by an able and conscientious judge, and this court should not reverse the trial court on appeal unless there has been a showing of an abuse of discretion. No evidence whatever is contained in the record, and it is elementary that this court cannot find an abuse of judicial discretion from a bare record.

As I view K. S. A. 38-129, the statute is clear and unambiguous. It provides, very simply, that if either the father or mother of a minor child be dead, the parents of the deceased person may be granted reasonable rights of visitation with the child during its minority where the district court finds that such visitation would be in the best interests of the child. Adoption proceedings are not

mentioned in the statute and, in my opinion, have nothing to do with it. An adoption cannot alter or repeal the biological grandparent-grandchild relationship. That relationship persists as a rule of nature no matter how much a court may strain to circumvent it.

So far as I can see, there is no basic conflict between K. S. A. 38-129 and statutes relating to adoption. They are not mutually destructive or at cross purposes. They can and should be allowed to coexist provided the best interests of minor children are thereby served. Certainly it cannot be said that an adoptive parent has greater rights with respect to a minor child than a natural parent would have, although the court appears to suggest otherwise.

One of the joys of childhood is having grandparents. Similarly, grandparents treasure the happiness which grandchildren bring to their declining years. No doubt the legislature in enacting K. S. A. 38-129 intended to make possible the continuation of the grandchild-grandparent relationship even after the child has lost a natural parent, provided the child's best interests can be served in this way.

I would affirm this case on the basis of the trial court's finding that the best interests of this child did not require modification or termination of the order allowing visitation rights to Mrs. Tarwater.