In the Matter of Visitation Rights of Pauline FOX with Grandchildren, Tonya Marie Partin and Christopher Lee Partin, minor children.

No. 49184.

Supreme Court of Oklahoma.

June 21, 1977.

Bruce Peterson, Tulsa, for appellants.

George M. Park, Broken Arrow, for appellee.

HODGES, Chief Justice.

This is an appeal from a judgment granting visitation rights to Pauline Fox, the maternal grandmother of Tonya Marie Partin and Christopher Lee Partin, minor children, who were adopted by appellants, Ralph Willard Partin and Lola Clark Partin.

Larry Wayne Partin and Mary Kathleen Partin, nee Hill, were married, and of that marriage two children were born: Tonya Marie Partin, October 18, 1967, and Christopher Lee Partin, July 1, 1969. The parents were divorced, and the mother was awarded custody of the two children. Subsequently, the mother was killed in an automobile accident on December 19, 1970.

In February, 1971, the district court of Tulsa County, Juvenile and Family Relations Division, awarded custody of the children to Ralph Willard Partin and Lola Clark Partin, paternal grandparents, and parents of the children's father. At the time of his former wife's death, the children's father was unemployed and living with his parents. Pauline Fox, the maternal grandmother, applied for visitation rights with her grandchildren, and visitation rights were granted by the court. Larry Wayne Partin remarried, and on May 9, 1975, consented to have his parental rights terminated. He executed a consent to adoption by his parents of his children. The children were legally adopted by Ralph Willard Partin and Lola Clark Partin May 19, 1975. On August 7, 1975, Pauline Fox filed an application for visitation rights with Tonya Marie Partin and Christopher Lee Partin, under the provisions of 10 O.S. 1975 Supp. § 5.[1] The district court of Tulsa County held that 10 O.S.1975 Supp. § 5 was applicable even though the grandchildren were legally adopted under the provisions of 10 O.S.1971 § 60.1, et seq., and permitted visitation rights by Pauline Fox.

■ The appellants assert that the legal adoption of a minor child pursuant to the Uniform Adoption Act, 10 O.S.1971 § 60.1, et seq., terminates the possible visitation rights afforded the parents of a deceased parent of a minor child under the provisions of 10 O.S.1975 Supp. § 5. We agree.

■ The purpose of adoption proceedings is to terminate all legal relationships and rights between a minor child and its natural parents, and to establish these rights in the adoptive parents. We have recognized that there are, however, no statutory provisions limiting an adopted child's statutory right to inherit from its natural parent.[2] A decree of adoption severs the child from its own family tree and engrafts it upon that of the new parentage. Public policy requires the severance of all old ties.[3] The effect of adoption is to readjust a fundamental human relationship, and to estab-

---

1. It is provided by 10 O.S.1975 Supp. § 5 in pertinent part:

    When one or both parents are deceased or if they are divorced, any grandparent, who is the parent of the child's deceased or divorced parent, shall have reasonable rights of visitation to the child, when it is in the best interest of the child. The district courts are vested with jurisdiction to enforce such visitation-rights and make orders relative thereto, upon the filing of a verified application for such visitation rights.

    Notice as ordered by the court shall be given to the person or parent having custody of said child and the venue of such action shall be in the county of the residence of such person or parent.

2. *Stark v. Watson,* 359 P.2d 191 (Okl.1961).

3. *Browning v. Tarwater,* 215 Kan. 501, 524 P.2d 1135 (1974).

lish a family status at law[4] with all the legal consequences, obligations and incidents arising and growing out of the status of natural parent and child. Where the adoption statute[5] accords the adopted child the status of a natural child and frees the natural parents of legal obligations toward it, a court in granting an adoption decree is without authority to include a grant of visitation privileges to the parent or members of the parent's family in the decree.[6]

Kansas has similar statutes to 10 O.S.1975 Supp. § 5 and 10 O.S.1971 § 60.16. The Kansas Supreme Court in *Browning v. Tarwater*, 215 Kan. 501, 524 P.2d 1135 (1974) held that the adoption statute controls over the statute granting visitation rights to the parent of a deceased father of an unmarried minor child. The Court reasoned that to interpret the statute otherwise would mean that an adoptive parent would be subjected to the influence of a third person concerning his adopted child, which would not be conducive to the best interest of the child. The Court held that adoption had the effect of prohibiting the grandmother from exercising visitation rights because a child, when adopted, has new parents and grandparents.

Under the statute, 10 O.S.1971 § 60.16, the adoptive parents are entitled to exercise all the rights of natural parents. Thus, whether the natural grandmother, Pauline Fox, can continue visitation with the children is within the discretion of the children's adoptive parents. While we sympathize with the considerations which lead the trial court to grant visitation rights in this case, the compassion shown by the trial judge must give way to the new family union which the law has created. The severance by adoption must be complete. Although the new parents are free to allow anyone they wish to visit the children, there is no legal authority for compelling them to do so once the final decree of adoption is entered.

REVERSED.

LAVENDER, V. C. J., and DAVISON, WILLIAMS, IRWIN, BERRY, SIMMS and DOOLIN, JJ., concur.

BARNES, J., dissents.

---

**4.** *In the Matter of Del Moral Rodriguez,* 552 P.2d 397 (Okl.1976).

**5.** The Oklahoma Uniform Adoption Act, 10 O.S.1971 § 60.16 establishes the relationship of natural parent and child:

(1) After the final decree of adoption is entered, the relation of parent and child and all the rights, duties and other legal consequences of the natural relation of child and parent shall thereafter exist between such adopted child and the adoptive parents adopting such child and the kindred of the adoptive parents. From the date of the final decree of adoption, the child shall be entitled to inherit real and personal property from and through the adoptive parents in accordance with the statutes of descent and distribution, and the adoptive parents shall be entitled to inherit real and personal property from and through the child in accordance with said statutes.

(2) After a final decree of adoption is entered, the natural parents of the adopted child, unless they are the adoptive parents or the spouse of an adoptive parent, shall be relieved of all parental responsibilities for said child and have no rights over such adopted child or to his property by descent and distribution.

**6.** *Spencer v. Franks,* 173 Md. 73, 195 A. 306, 114 A.L.R. 263 (1937). See Annot., "Inclusion in decree of adoption of provision giving natural parent right to visit child, or otherwise preserving rights of natural parent." 195 A. 306, 114 A.L.R. 271 (1937). See also: *Lee v. Keplar,* 197 So.2d 570 (Fla.App.1967); *People ex rel. Levine v. Rado,* 54 Misc.2d 843, 283 N.Y.S.2d 483 (1967); *Smith v. Painter,* 412 S.W.2d 28 (Tex.1967); *Smith v. Trosclair,* 321 So.2d 514 (La.1974); *Jones v. Allen,* 277 So.2d 599 (Fla.App.1973).