Cleo Mable BARRINER and Jewel Norman Barriner, Appellants,

v.

Valorie Lynn STEDMAN and Ray Edwin Stedman, Appellees.

No. 50340.

Supreme Court of Oklahoma.

June 6, 1978.

Rehearing Denied July 12, 1978.

Bloodworth, Smith & Biscone by Robert B. Smith, Oklahoma City, for appellants.

Burton & Hamlin by Joe W. Hamlin, Lawton, for appellees.

BARNES, Justice:

This case presents for review a decision entered by the Trial Court denying Appellants' Petition to Vacate a Decree of Adoption, and involves the custody of

Christy Len Stedman (Christy) who was six years old at the time of trial.

The pertinent facts are as follows: Christy's natural parents were divorced in 1975 and custody was awarded to the paternal grandparents, subject to visitation by the natural parents. Subsequently, there were several motions filed to modify the decree. Then on June 5, 1976, the natural father, Paul Len Stedman, fired fatal shots at the natural mother, Deborah Kay Holcomb, formerly Stedman.

Appellants herein, Cleo Mable Barriner and Jewel Norman Barriner, the maternal grandmother and step-grandfather of Christy, then filed on July 6, 1976, an Application for Guardianship of Christy. Hearing was set for July 26, 1976.

On June 5, 1976, the natural father had been charged with causing the death of Christy's mother and was committed to Western State Hospital at Fort Supply for a sixty-day observation beginning July 15, 1976. For that reason, the guardianship hearing was continued to August 27, 1976.

On July 29, 1976, Appellants commenced another action aimed at visitation rights with Christy, and on August 2, 1976, a hearing was held and order entered granting them specific visitation rights, notwithstanding that their Application for Guardianship was still pending before another District Court Judge.

On August 12, 1976, the natural father was released from Fort Supply, being found "competent, able to distinguish between right and wrong . . . ." Thereafter, he inquired about the possibility of Christy's adoption by his brother and sister-in-law. One of his attorneys contacted the Minister of the First Presbyterian Church in Lawton, Oklahoma, who made an investigation concerning the proposed adoptive parents, Valorie Lynn Stedman and Ray Edwin Stedman, Appellees herein. This investigation consisted of a three-hour visit to Appellees' home about a week before the adoption proceedings. The Minister never saw the child. It is to be noted that the Petition in Error raises a question concerning the Trial Court's giving effect to the Minister's investigation and report. We deem it unnecessary to address this issue since it was not briefed by either party on appeal.

On August 25, 1976, Appellees and the natural father appeared in the Trial Court wherein Appellees' Petition for Adoption of Christy was presented. At that hearing, the natural father's written consent to adoption was presented to the Court and questions concerning whether or not he understood the consent and nature of the proceedings were asked. Testimony was presented concerning the Minister's investigation, and his report was examined by the Court. Appellees moved for waiver of Interlocutory Decree, which was granted. A final Decree of Adoption was then requested and granted the same day. No formal notice of this adoption was given Appellants.

Thereafter, Appellants were advised by the Court assigned to the guardianship application that their Application for Guardianship was moot. On August 30, 1976, Appellants filed a Petition to Vacate the Adoption. After a full hearing, in which Appellants attempted to show fraud, conspiracy, connivance, deceit, bad reputation of Appellees and fraud in procuring the adoption, the Trial Court found that the evidence presented established no fraud, "and that for the better interest of the child involved here, she's been placed with the most suitable family that she can be placed with for her rearing from her point of view." Appellees' demurrer to Appellants' Petition to Vacate the Adoption Decree was sustained for insufficient evidence, and Appellants lodged this appeal from the Trial Court's sustention of such demurrer.

It is to be noted that subsequent to the entry of the Decree of Adoption the natural father of Christy was convicted of killing Christy's mother, in the District Court of Comanche County, Oklahoma. This was one basis upon which an Amended Petition to Vacate the Adoption was filed by the Appellants. However, at the time of the hearing on the Petition to Vacate the Decree, no judgment or sentence had been rendered on the jury verdict.

Appellants appeal under two propositions: (1) The Trial Court erred in failing to vacate its Decree of Adoption, inasmuch as the decree was entered as a result of a fraud being perpetrated against the court; and (2) the Trial Court erred in accepting the consent of the natural father as binding on it for the adoption of the minor child, Christy.

Under their first proposition, Appellants argue that the Appellees were well aware they permitted Appellants to proceed with their Application for Guardianship (in which the sole issue would have been whether it would be in the best interests of the child for Appellants to be appointed guardians), and then circumvent the requirement of proving best interests of the child in that proceeding by obtaining a continuance and then presenting their Petition for Adoption unopposed, since there was no notice to Appellants.

Appellants contend the sole issue in the hearing on Petition to Vacate the Decree of Adoption was whether the decree was obtained by fraud, and that no hearing whatsoever as to the propriety of the Appellees' custody or best interests of the child has been conducted. The only authority cited by Appellants is *Wright v. Saltmarsh*, 174 Okl. 226, 50 P.2d 694 (1935), which held:

"Fraud which vitiates a judgment and which will authorize the Court to vacate the judgment is fraud extraneous of the record by which the Court was imposed on in the proceedings and by which the party complaining was prevented from having his interest fairly presented or fully considered by the Court." *Ford v. Banks*, 203 Okl. 411, 222 P.2d 744 (Okl. 1950), and *Gray v. McKnight*, 183 P. 489 (Okl.1919).

We have carefully reviewed both the record and transcript in the case at bar. Contrary to Appellants' contention, the record does reflect that the hearing on the Petition to Vacate the Decree of Adoption included testimony as to the best interests of the minor child and as to the propriety of adoption by the Appellees. Furthermore, we note that the only fraud alluded to involved whether the Adoption child had an estate. The record testimony reflects there exists both a $4,000.00 life insurance policy on the life of the deceased natural mother, of which Christy is beneficiary, as well as social security benefits. There is some allusion to the fact that the Petition for Adoption contained a falsehood in stating the child had no estate.

The burden of proof as to allegations of fraud is upon the party alleging it, and it must be established by clear, unequivocal and competent evidence. *Brooks v. LeGrand*, 435 P.2d 142 (Okl.1967). Whether Appellants met this burden goes to the sufficiency of the evidence and is addressed to the sound discretion of the Trial Court. That court's decision should not be disturbed unless clearly against the weight of the evidence. *DeGolyer v. Chesney*, 527 P.2d 844 (Okl.1974). We agree with the Trial Judge that there was insufficient evidence presented to prove fraud.

Under their second proposition, Appellants argue the Trial Court erred in accepting the consent of the natural father as binding on it for adoption and bring into question the legislative intent of 10 O.S. 1974 Supp., § 60.5, which states:

"An adoption of a child may be decreed when there has been filed written consent to adoption executed by:

"(1) Both parents, if living, or the surviving parent, of a legitimate child; * * * *"

Appellants argue that from a cursory reading of the above statute neither a father or mother has, independent of the other, power to give consent to adopt so long as the other parent is living; therefore, can it be said that a parent can conceivably gain a power which he did not possess by the wrongful act of killing the other parent? Appellants contend neither logic nor equity would permit such a construction of the statute. Appellants cite no authority to support their contention, but point out the law will not permit an individual to inherit property as a result of his own wrongful act of murdering the decedent.

Appellees argue that 10 O.S.1971, §§ 60.1–60.23, is the complete legislative enactment of the Uniform Adoption Act, and that nowhere in the Act is it required that notice of a pending or proposed adoption be given to any party other than those whose consent is required. Appellees urge that Appellants' argument that by reason of the filing of an Application for Guardianship they were entitled to notice of the adoption is untenable for several reasons: (1) Adoptions could be easily frustrated by spurious or malicious filings of relatives of applications for guardianship, etc.; (2) the Legislature could have provided for notice to third parties whether applications for specific relief had been filed or not; (3) the Appellants' Application for Guardianship was defective since there was no showing on the face of the application that it was statutorily applicable under 58 O.S. 1971, § 761; and (4) the Appellants' Application was meaningless by reason of failure to allege any degree of parental abuse, unfitness of incompetence on the part of the natural father, nor any allegation that the surviving natural parent's parental rights should be terminated.

Appellees rely on the Kansas case of *Browning v. Tarwater*, 215 Kan. 501, 524 P.2d 1135 (1974), in which the question presented was whether a paternal grandmother, who had been granted visitation rights at specified times with her grandchild, was an interested party within the meaning of the Kansas adoption statute so as to be entitled to notice of adoption proceedings. In that case, Connie Lewis and Jack Lewis were married and had a daughter, Lori. Jack Lewis died and Connie Lewis married Robert Browning. Etta Tarwater, the mother of Jack Lewis, deceased, obtained a court order giving her visitation rights to Lori. Thereafter, Robert Browning adopted Lori. No notice of this adoption was given to the paternal grandmother until after the adoption was completed. The Brownings attempted to cut off the visitation rights of the paternal grandmother, which relief was denied by the District Court.

The Kansas adoption statute provides (K.S.A. 59–2278):

"The written consents required shall be filed with the petition. Upon the filing of the petition the court shall fix the time and place for the hearing thereon, which shall not be less than thirty (30) days nor more than sixty (60) days from the filing of the petition, which time may be extended by the court for cause. *Notice shall be given to all interested parties*, including, except when the petitioner is a stepparent, the state department of social welfare. . . . " (Emphasis ours)

In reversing the District Court, the Kansas Supreme Court said:

" * * * The question is whether Etta Tarwater, the grandmother, was an interested party within the meaning of the statute and entitled to notice of the adoption proceedings.

"For the reasons hereafter assigned we do not think Etta Tarwater, the grandmother, was an interested party in the adoption proceedings and entitled to notice of the pending adoption under the foregoing statute.

\* \* \* \* \* \*

"The disposition of the issue in the instant case relative to the child is controlled by the adoption. The adoption has the effect of prohibiting Etta Tarwater, the grandmother, from exercising visitation rights because the child, when adopted, has new parents and new grandparents (K.S.A.1973 Supp. 59–2103).·

\* \* \* \* \* \*

"Under the provisions of K.S.A.1973 Supp. 59–2102 those parents and agencies required to give consent to an adoption are alternatively enumerated. On the facts in this case Etta Tarwater, the grandmother, is not among those enumerated in 29–2102, supra. Under these circumstances there is nothing Etta Tarwater could have done to defeat the adoption by Mr. Browning, the present husband of Connie Lynn. Etta Tarwater's consent for the adoption of Lori Lynn by Mr. Browning was not required. It follows that within the meaning of

K.S.A. 59–2278 Etta Tarwater was not an interested party entitled to notice of the adoption."

The *Browning* case, *supra*, was cited by this Court in *Matter of Fox,* 567 P.2d 985 (Okl.1977). There, the maternal grandmother of two children, whose natural mother was killed in an automobile accident, was granted visitation rights by court order. The natural father remarried and consented to have his parental rights terminated. He executed a consent to an adoption by his parents and they legally adopted the children. The facts show there was no notice of the adoption to the maternal grandmother, notwithstanding that she had a pre-existing court order granting her visitation rights. This Court said:

" * * * Where the adoption statute accords the adopted child the status of a natural child and frees the natural parents of legal obligations toward it, a court in granting an adoption decree is without authority to include a grant of visitation privileges to the parent or members of the parent's family in the decree."

Appellees contend that if the Oklahoma adoption law overrides a specific statute providing for grandparental visitation, as determined in *Browning* and *Matter of Fox,* the rationale must be that an adoption is designed to establish a new family status at law; therefore, applications for guardianships must likewise give way to the adoption, making uninterested parties and those whose consent is not required by statute without standing. We think this reasoning is sound.

An adoption procedure, while guided by a consideration of the best interests of the child, was not intended, nor statutorily required, to weigh every competing interest among various families. To do so would create conflicts which would frustrate the purpose of adoption in the first place.

From our review herein, we find no abuse of discretion by the Trial Court. We find lower court conducted a full and complete hearing on Appellants' Petition to Vacate

and properly sustain Appellees' demurrer. Judgment of the Trial Court is affirmed.

AFFIRMED.

All the Justices concur.