434 So.2d 780 (1983)
Ex parte Mary Murphy BRONSTEIN and Alvin C. Bronstein.
(Re John MURPHY and Nancy Murphy v. Mary Murphy BRONSTEIN and Alvin C. Bronstein.)
82-152.
Supreme Court of Alabama.
May 6, 1983.
*781 J. Russell Gibson, III of Phelps, Owens, Jenkins, Gibson & Fowler, Tuscaloosa, for petitioners.
Windell C. Owens, Monroeville, for respondents.
MADDOX, Justice.
The issue presented on appeal is whether paternal grandparents who desire to visit their grandchildren may invoke the jurisdiction of the court to obtain visitation rights when the children's natural mother has subsequently remarried and the natural father has consented to the stepfather's adoption of the children. The facts of this case are amply set forth in the decision of the Court of Civil Appeals in Murphy v. Bronstein, 434 So.2d 778 (Ala.Civ.App.1982) and we need not repeat them here. The issue presented is one of first impression before this Court; we reverse the judgment of the Court of Civil Appeals.
Adoption is not merely an arrangement between the natural and adoptive parents, but is a status created by the state acting as parens patriae, the sovereign parent; therefore the exercise of sovereign *782 power in adoption curtails the fundamental rights of the natural parent. Davis v. Turner, 337 So.2d 355, 360 (Ala.Civ.App. 1976), cert. denied, 337 So.2d 362 (Ala.1976). The effect of a final order of adoption is explained in Code 1975, § 26-10-5(b) as follows:
"When the final order of adoption shall have been entered, the natural parents of the child, if living, shall be divested of all legal rights and obligations due from them to the child or from the child to them and the child shall be free from all legal obligations of obedience or otherwise to such parents. The adopting parent or parents of the child shall be invested with every legal right in respect to obedience and maintenance on the part of the child as if said child had been born to them in lawful wedlock, including the right of said adopting parent or parents of inheritance to real estate and to the distribution of personal estate on the death of such adopted child as if said child had been born to them in lawful wedlock, and the child shall be invested with every legal right, privilege, obligation and relation in respect to education, maintenance and the rights of inheritance to real estate and to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock."
The law is unequivocal. It mandates that upon entry of a final order of adoption, the natural parent is "divested of all legal rights and obligations" and the child is freed from all corresponding obligations of obedience to such parent. With the overall policy of the adoption statute being to treat adopted children in all respects as natural children, McCaleb v. Brown, 344 So.2d 485, 487 (Ala.1977), in all logic, this abrogation of all legal relationships and rights would likewise apply to the grandparents of the adopted child.
The appellants assert that the case of Futral v. Henry, 45 Ala.App. 214, 228 So.2d 827 (Ala.1969), should be controlling of the issues in this case. The Court of Civil Appeals in dictum in Futral stated that it agreed with the finding and relief granted by the trial court decree which granted the paternal grandparents the right to visit their grandchild who, following the death of his natural father and the remarriage of his natural mother, had been adopted by his stepfather. The case was reversed on other grounds, however.
This Court was not requested to review Futral and we are not convinced that the dictum of Futral should be adopted as the law of this case. Nor do we find the cases cited by the Court of Civil Appeals in its opinion particularly applicable here, because this case is not one involving the custody only of the grandchildren, but one in which the child has been adopted. The cases cited by the Court of Civil Appeals deal almost exclusively with a court's discretion during custody proceedings. These custody cases contain some persuasive principles, but do not deal with the legal issue presented in this case.
Under common law principles, grandparents lacked any legal right to visitation and communication with their grandchildren if such visitation was forbidden by the parents. Judge Holmes, in his special concurrence with the opinion of the Court of Civil Appeals, points this out. Indeed, the parents' obligation to allow such visitation was a moral, not a legal obligation. See generally, Annot., 90 A.L.R.3d 322 (1979); see also 59 Am.Jur.2d, Parent and Child, § 92 (1971). The Court of Civil Appeals grounds its decision to grant the grandparents a right to be heard on the ground that the best interests of the child is a paramount consideration in custody cases, and holds that the same principle should apply in this case in which the grandchild has been adopted. The Court of Civil Appeals opines that in 1980, the legislature enacted Act No. 80-327, codified at § 30-3-3, which provides that "[t]he presiding judge in a divorce case involving custody of children, may award, at his discretion, visitation rights to the grandparents of such children."
We must respectfully disagree with the learned judges on the Court of Civil *783 Appeals, because the language of Code § 30-3-3 makes clear that any such grant of visitation rights to grandparents is purely discretionary with the trial court, and may be exercised only in instances when the court is considering custody matters in a divorce case, and finds that conditions are such that it is appropriate to allow the grandparents the privilege of visitation. As we construe this statute, grandparents are not given a legal right of visitation, but only a right to request that the court, at the time the divorce case is pending, to grant them the privilege of visitation.
We now consider what other jurisdictions have done when faced with this question. In the Matter of the Adoption of Gardiner, 287 N.W.2d 555 (Iowa 1980), the Iowa Supreme Court held that an adoptive court had no authority to grant visitation rights to grandparents. It advanced two policy reasons for denying grandparent visitation: (1) that grandparent visitation, when against the wishes of the adoptive parents, would never be in the best interest of the child; and (2) that visitation rights of the grandparents are derivative of the rights of biological parents and therefore, when an adoption decree terminates parental rights, the rights of the grandparent are also terminated. 287 N.W.2d at 558. In another case, Browning v. Tarwater, 215 Kan. 501, 524 P.2d 1135 (1974), the Kansas Supreme Court, ruling that the statutory grant of visitation rights to grandparents was not intended to have application after a child to whom a grandparent was given visitation rights is adopted by a stepparent, stated:
"The adoption of a child creates a statusthe domestic relation of parent and child. At the conclusion of the adoption proceeding, all the legal incidents of the natural relation of parent and child attach to the new status, and the child becomes entitled to the same rights of person and property as if it were the child by birth of the person adopting it. It is elementary law that the aim and end of adoption statutes is the welfare of children. The theory of the adoption statute is that such welfare will be best promoted by giving an adopted child the status of a natural child....
"Public policy demands that an adoption carry with it a complete breaking of old ties. Under the new relation thus created, the adoptive parents are as much entitled to the custody of their adopted child as natural parents are to their natural children. The rights of the adoptive parents are of the same nature and scope as those of a natural parent, subject to the same restrictions as those of natural parents...."
524 P.2d at 1139. A number of courts from other jurisdictions have similarly held that adoption statutes pre-empt visitation statutes. See Poe v. Case, 263 Ark. 488, 565 S.W.2d 612, 614 (Ark.1978); Lee v. Kepler, 197 So.2d 570, 573 (Fla.App.1967); Houston v. Houston, 156 Ga.App. 47, 48, 274 S.E.2d 91, 92 (Ga.App.1980); Smith v. Trosclair, 321 So.2d 514, 516 (La.1975); Bikos v. Nobliski, 88 Mich.App. 157, 163, 276 N.W.2d 541, 544 (1977); Aegerter v. Thompson, 610 S.W.2d 308, 310 (Mo.App.1980); Levine v. Rado, 54 Misc.2d 843, 845, 283 N.Y.S.2d 483, 486 (Sup.Ct.1967); Acker v. Barnes, 33 N.C. App. 750, 752, 236 S.E.2d 715, 716, cert. denied, 293 N.C. 360, 238 S.E.2d 149 (1977); In re Fox, 567 P.2d 985, 986 (Okl.1977); Deweese v. Crawford, 520 S.W.2d 522, 526 (Tex.Civ.App.1975). But see Roquemore v. Roquemore, 275 Cal.App.2d 912, 917, 80 Cal. Rptr. 432, 435 (1969); Mimkon v. Ford, 66 N.J. 426, 437, 332 A.2d 199, 202 (1975); Scranton v. Hutter, 40 A.D.2d 296, 299, 339 N.Y.S.2d 708, 711 (1973); Graziano v. Davis, 50 Ohio App.2d 83, 90, 361 N.E.2d 525, 530 (1976).
Alabama is a common law state, and there is no question that the common law did not allow grandparents a legal right of visitation, and the legislature has not seen fit to abrogate this common law rule. Code 1975, § 1-3-1.
The welfare of a child is of utmost importance, but adoption, like birth, creates legal relationships under which adoptive parents gain certain rights which pre-empt any visitation rights by natural parents or grandparents. Consequently, we hold that because *784 there is a societal importance in the establishment of a permanent and stable family unit, see Pendergrass v. Watkins, 383 So.2d 851, 855 (Ala.Civ.App.1980), an adoption of a child must necessarily sever all former family bonds and relationships. The courts are not free, therefore, to intervene on behalf of relatives who seek visitation, especially when the child's adoptive parents have decided not to permit visitation.
For the foregoing reasons, the granting of the motion to dismiss by the circuit court was proper; the decision of the Court of Civil Appeals is hereby reversed and the cause is remanded with the directions that the judgment of the circuit court be reinstated and affirmed.
REVERSED AND REMANDED WITH DIRECTIONS.
JONES and ADAMS, JJ., concur.
SHORES, J., concurs specially, with whom EMBRY and BEATTY, JJ., concur.
TORBERT, C.J., and FAULKNER and ALMON, JJ., dissent.
SHORES, Justice (concurring specially):
I agree that the common law does not recognize, and never has, any right of visitation by grandparents. I hope, however, that the Legislature will address this issue and pass legislation extending to grandparents a right to retain and maintain a relationship with the children of their children. Precious little remains of the family structure, which played such a vital part in the development of this nation. It seems unconscionable to allow its further fragmentation.
EMBRY and BEATTY, JJ., concur.
TORBERT, Chief Justice (dissenting).
I simply cannot reject any claimed rights of the grandparents without first allowing them the opportunity to be heard or having some proceeding to determine if visitation would be in the best interests of the children.
FAULKNER, J., concurs.