710 P.2d 410 (1985)
In the Matter of: W.E.G. and J.R.G., Minor Children Under the Age of Eighteen Years.
Nos. S-777, S-778 and S-803.
Supreme Court of Alaska.
December 6, 1985.
*411 Bonnie J. Coghlan, Fairbanks, for Grandparents.
J. John Franich, Fairbanks, for Foster Parents.
Gail M. Ballou, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for Biological Father.
Richard D. Savell, Fairbanks, for Adoptive Parents.
G.R. Eschbacher, Anchorage, for Biological Mother.
D. Rebecca Snow, Asst. Atty. Gen., Fairbanks, Norman C. Gorsuch, Atty. Gen., Juneau, for the State.
Daniel L. Callahan, Schendel & Callahan, Fairbanks, for Guardian Ad Litem.
Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION
MOORE, Justice.
This difficult case concerns the adoption of two young boys. Their foster parents seek to adopt them, with the consent of the boys' biological parents. However, the boys' maternal grandparents oppose the foster parents' adoption petition; they, too, have filed an adoption petition, without the consent of the boys' biological parents. The superior court consolidated all actions concerning the boys, then excluded the grandparents from participating as parties in the hearing on the foster parents' petition. Ultimately, the superior court granted the foster parents' petition but also granted post-adoption visitation rights to the grandparents, contrary to the adoption statute. The court ruled the statute as applied to be unconstitutional as a denial of equal protection.
As discussed below, we conclude that: (1) AS 47.10.230(e) does not entitle the grandparents to an adoption preference; (2) the adoption statute as applied does not violate equal protection; (3) the inescapable language of the adoption statute precludes granting post-adoption visitation rights to an adopted child's biological relatives; (4) the superior court's post-consolidation exclusion of the grandparents was harmful error; and (5) on remand the superior court, in determining the boys' best interests, should consider the duration and quality of the time that the boys have spent in the foster parents' custody.

I. FACTS AND PROCEEDINGS
In February 1984 the Division of Family and Youth Services (the Division) was granted custody of the young sons (now ages 3 and 5) of M.B. and W.I. in a children-in-need-of-aid proceeding pursuant to AS 47.10.080. The Division placed the boys in the foster home of R.G. and C.G., who have had physical custody of the boys since that time.
On April 13, 1984, a stipulation was filed with the court, reflecting an agreement among all parties that it would be in the boys' best interest to be adopted by their foster parents. The boys' parents signed consents to such adoption. Later, however, the foster parents discontinued their initial adoption application; consequently, a series of other couples considered adopting the boys. The maternal grandparents also filed a petition to adopt the boys.
Within a month the Division concluded that the best alternative placement for the boys would be with their grandparents. This conclusion was contested by the boys' biological mother. A hearing was then held to determine whether the Division's decision to move the boys from the foster parents' home to that of the grandparents was an abuse of discretion. The court continued the hearing to allow the Division to "investigate the new alternatives."
*412 On June 18 the hearing was reconvened. The foster parents then informed the Division's social worker that they again wished to adopt the boys. At the close of testimony the court recessed the proceedings again to allow the Division to evaluate the foster parents' renewed request to adopt the boys.
On July 18 the foster parents filed their petition to adopt the boys. The biological parents again gave their consents to the foster parents. A hearing on the foster parents' adoption petition was scheduled for August 16, but the grandparents obtained a temporary restraining order staying that proceeding. At the TRO hearing on August 23, Judge Van Hoomissen consolidated all proceedings pertaining to the boys.
On October 11 the superior court held a pretrial conference on the consolidated cases and ruled: (1) that the foster parents' adoption petition was the primary matter to be decided; (2) that their petition would be heard first; and (3) that the grandparents would not be allowed to participate as parties. The court further ruled that if the foster parents' adoption petition were granted, the matter of the boys' adoption placement would be concluded.
On October 15-16 the superior court held an adoption hearing and decided that the boys should be adopted by the foster parents. The court also determined that continued contact between the boys and their grandparents would be in the boys' best interests, and that AS 25.23.130(a) is unconstitutional as applied to this case. Judge Hodges deemed the statute a violation of equal protection because it "does not provide for the maintenance of familial relationships that are in the best interests" of the adopted child.
Subsequently, the boys' biological mother filed a motion to withdraw her consent to the foster parents' adoption petition. The court did not grant her motion. Ultimately, the court signed a revised order that set forth the grandparents' post-adoption visitation rights. Multiple appeals and cross-appeals followed.

II. DISCUSSION
The foster parents have appealed the superior court's decision that their adoption decree would not terminate the boys' relationship with their biological grandparents, arguing that the adoption statute precludes an order of enforceable post-adoption visitation rights.
The grandparents challenge the superior court's decision to consider the foster parents' adoption petition first, instead of their own petition. They argue that, as natural relatives, they should have been entitled to a preference, and that the superior court erred in precluding them from participating as parties in the hearing on the foster parents' adoption petition. They also contend that the adoption statute, AS 25.23.130, violates equal protection.
The boys' biological father argues in favor of the foster parents and against the grandparents.[1] The boys' biological mother argues that the superior court did not err in entering an adoption decree that also preserved the boys' legal relationship with their biological grandparents.
The guardian ad litem implicitly acknowledges that the court erred in excluding the grandparents from participating as parties in the hearing on the foster parents' adoption petition. The guardian ad litem contends, however, that such exclusion should be deemed harmless because the state adequately represented their interests during those proceedings.
The Division argues that the adoption statute should be construed to allow the granting of post-adoption visitation with biological relatives. However, the guardian ad litem argues that, even if this court were to stretch the adoption statute to *413 allow post-adoption visitation rights, in this case it would not be in the boys' best interests for a court to order such visitation.[2]
The Division also contends that the foster parents' adoption petition was deficient because the biological parents' consents were invalid. However, the Division did not appeal the superior court's adverse ruling on this point. Although the grandparents included the alleged invalidity in their points on appeal, they have not briefed that point. Thus the issue has been abandoned. Union Oil Co. v. State, 677 P.2d 1256 (Alaska 1984); Joseph v. Jones, 639 P.2d 1014 (Alaska 1982).
Finally, the parties dispute whether the superior court should, upon remand, consider the period that the boys have been in the foster parents' care in determining which placement would be in the boys' best interests.

A. AS 47.10.230(e) DOES NOT ENTITLE NATURAL RELATIVES TO A PREFERENCE IN THE ADOPTIVE PLACEMENT OF CHILDREN
In this case the grandparents appeal an adoption order by the superior court. They argue that they are entitled to a preference over the foster parents because AS 47.10.230(e) provides in part: "A child may not be placed in a foster home or in the care of an agency or institution providing care for children if a blood relative exists who requests custody of the child."
However, there is no such blood-relative preference in adoption cases. AS 47.10.230(f) is clear in stating: "Nothing in this subsection or in (e) of this section applies to child placement for adoptive purposes."
Moreover, as for subsection (e), the grandparents never initiated an action in superior court for de novo review of the Division's foster care decision to place the boys with the foster parents instead of with the grandparents. It seems that the Division did not make a formal determination to deny the grandparents' request to be the boys' foster parents. The Division characterized its decision on the grandparents' request as "pending" when all the parties initially stipulated to the foster parents' adoption of the boys. Later, after the foster parents indicated that they had changed their minds about the adoption, the Division did favor placing the boys with their grandparents. It is uncertain whether the Division intended such placement to be for foster care or adoption. Nevertheless, the grandparents did not request de novo review of the Division's original inaction on their request to become the boys' foster parents. That issue is therefore not before us.

B. AS 25.23.130 IS CONSTITUTIONAL
The superior court concluded that the adoption statute, AS 25.23.130(a), is "unconstitutional as applied in this case" because it "does not provide adopted children with the equal protection of the laws," i.e., it does not allow the court to fashion a decree that would provide for post-adoption visitation with biological relatives. However, the superior court did not indicate a discriminatory classification, nor explain what protected right might be discriminatorily infringed, nor present any analytical basis for the ruling of unconstitutionality.[3] *414 We therefore reverse the superior court on this issue.

C. THE STATUTORY PRECLUSION OF POST-ADOPTION VISITATION
AS 25.23.130(a) provides that a final decree of adoption has the effect of terminating "all legal relationships between the adopted person and the natural parents and other relatives of the adopted person."[4] This statute clearly provides, however harshly, that the final decree has the effect of making an adopted child a "stranger" to former relatives. The only exception set forth by the legislature is a provision allowing the court to provide for continuation of inheritance rights.
Some courts have decided that adoption does not necessarily preclude granting biological relatives a right to continued visitation. Futral v. Henry, 45 Ala.App. 214, 228 So.2d 827 (1969); Mimkon v. Ford, 66 N.J. 426, 332 A.2d 199 (1975); People ex rel. Sibley v. Sheppard, 54 N.Y.2d 320, 445 N.Y.S.2d 420, 429 N.E.2d 1049 (1981); Graziano v. Davis, 50 Ohio App.2d 83, 361 N.E.2d 525 (1976). However, other courts find, as we do today, that the clear language of the applicable adoption statute precludes granting post-adoption visitation to any blood relative, regardless of that relative's bond with the adopted child. Poe v. Case, 263 Ark. 488, 565 S.W.2d 612 (Ark. 1978); Matter of Adoption of Gardiner, 287 N.W.2d 555 (Iowa 1980); Browning v. Tarwater, 215 Kan. 501, 524 P.2d 1135 (1974); Bikos v. Nobliski, 88 Mich. App. 157, 276 N.W.2d 541 (1979); Acker v. Barnes, 33 N.C. App. 750, 236 S.E.2d 715 (1977) cert. denied, 293 N.C. 360, 238 S.E.2d 149 (1977).
A representative decision rejecting post-adoption visitation for biological relatives is Browning v. Tarwater, 215 Kan. 501, 524 P.2d 1135 (1974). In that case an adopted child's natural paternal grandmother sought visitation rights after the child was adopted by his stepfather.[5] She argued that she should be allowed post-adoption visitation because Kansas law does provide for grandparental visitation in custody cases.[6] The Kansas Supreme Court ruled *415 against the grandmother explaining as follows:
The adoption of a child creates a status  the domestic relation of parent and child... . It is elementary law that the aim and end of adoption statutes is the welfare of children. The theory of the adoption statute is that such welfare will be best promoted by giving an adopted child the status of a natural child... . Public policy demands that an adoption carry with it a complete breaking of old ties... . Where the adoption statute, as here, gives the adopted child the status of a natural child and frees the natural parents of legal obligations toward it, a court in granting an adoption decree is without authority to include in the adoption decree a grant of visitation privileges to the natural parent or members of the natural parent's family.
524 P.2d at 1139 (citations omitted; emphasis omitted).
Some courts favor approaching the issue of post-adoption visitation with biological relatives on a case-by-case basis. See, e.g., Mimkon v. Ford, 66 N.J. 426, 332 A.2d 199 (1975). They reason that since the policy justification for terminating all of an adopted child's ties to his biological family applies only to certain types of adoption, courts should have authority to order post-adoption visitation with a "natural" relative in special cases in which it would be appropriate.[7]
However, in order to allow post-adoption visitation, we would have to conclude that the more recent "grandparents' visitation" statute in the divorce/custody area, AS 25.24.150(a), was intended by the legislature to liberalize the strict adoption statute, AS 25.23.130.[8]
Both the adoption statute and the visitation statute applicable to divorce cases are concerned with the best interests of children. It may well be that in certain situations post-adoption visitation would be in the best interest of older children who have developed a demonstrable bond with a biological relative.[9]
However, we cannot conclude that the "grandparents' visitation" statute applicable to divorce-related custody cases was intended to indirectly liberalize the strictly worded adoption statute to allow post-adoption visitation rights for biological relatives. Therefore, despite the possible drawbacks of the legislature's approach, we decide that the statute precludes the post-adoption visitation rights granted to the grandparents by the superior court.[10]

*416 D. THE SUPERIOR COURT ERRED IN EXCLUDING THE GRANDPARENTS FROM PARTICIPATING IN THE HEARING ON THE FOSTER PARENTS' ADOPTION PETITION.
Although the grandparents made no motion to intervene under Civil Rule 24 in the foster parents' adoption hearing, they were nonetheless key participants in placement hearings held in the children-in-need-of-aid proceedings during May-June 1984. As the guardian ad litem states, "the trial court recognized [the grandparents'] interest in the action in subsequent proceedings where they did appear (through counsel) as parties and it may have acted in such a fashion as to excuse [the grandparents'] failure to make an actual motion to intervene" in the post-consolidation hearing on the foster parents' petition to adopt.
At the August 23, 1984 hearing on the grandparents' complaint for injunctive relief, Judge Van Hoomissen consolidated the children's proceeding, the foster parents' adoption action, the grandparents' adoption action and the grandparents' injunction complaint. Thus the grandparents became parties to all of the consolidated proceedings.[11]
Subsequently, at the pretrial conference on the adoption hearing, Judge Hodges stated:
The Court finds that under the facts of this case, the [foster parents'] adoption should proceed first. If the [foster parents'] adoption is granted, the matter is concluded.
I think that covers all of the issues. If the [foster parents'] adoption is not granted, you know, then we're back to  not totally to Square One, but we're back, I suppose, with the grandparents' adoption petition.
....
[I]t's the position of the Court that it's a private adoption ... but the State's involved because of the unique circumstances of this case.... [T]he grandparents can be called to testify as witnesses by the State or anybody else, but they may not participate in that adoption proceeding.
Since Judge Hodges did not exclude the grandparents from participation as parties until several days before the hearing on the foster parents' adoption action, the grandparents did not have a fair opportunity to file a motion to intervene.[12]
The superior court precluded the grandparents' participation as parties in the adoption hearing because it ruled that the foster parents' action was primary. The court based its ruling on the fact that only the foster parents had obtained the requisite consents of the biological parents.[13] Nevertheless, the superior court had already recognized that the grandparents had demonstrated a significant interest in the boys' foster placement and legal status. Therefore, we find that the grandparents should have been allowed to participate as parties. See Civ.R. 24(b).
The guardian ad litem, and the foster parents argue that the grandparents' *417 interests were adequately represented by the state. They contend that if the superior court did err in excluding the grandparents, such error was harmless. We disagree. The grandparents argue that they would have presented further evidence of their importance to the boys. Such evidence might have persuaded the superior court that adoption by the foster parents would not be in the boys' best interests, given a strong bond with their grandparents. We therefore conclude that the superior court harmfully erred in excluding the grandparents from participating in the foster parents' adoption hearing. For this reason, the decree of adoption must be vacated. Upon remand, the grandparents are entitled to participate as parties in any further hearings to determine whether the foster parents' adoption petition should be granted.

E. ON REMAND THE COURT SHOULD CONSIDER THE TIME THAT THE BOYS HAVE SPENT WITH THEIR FOSTER PARENTS.
Finally, the grandparents also contend that the lengthy period that the boys have spent with the foster parents should not be considered upon remand because the Division violated AS 47.10.230(e) by not placing the boys in the grandparents' foster care. We have previously rejected a similar argument. See S.N.E. v. R.L.B., 699 P.2d 875 (Alaska 1985); Craig v. McBride, 639 P.2d 303 (Alaska 1982). Thus, in making such a determination after remand, the court should consider the length and quality of the time that the boys have spent with their foster parents.
Therefore, we VACATE the superior court's ruling that AS 25.23.130(a) is unconstitutional, we VACATE the decree of adoption, and we REMAND this case for further proceedings in accordance with this opinion.
NOTES
[1] The boys' biological father also argues that the consent of the Division of Family and Youth Services is not necessary for the adoption of the boys. This argument is meritless. AS 25.23.040(a)(3) provides that a petition to adopt a minor may be granted only if written consent is given by every person listed in the statute, including "any person lawfully entitled to custody of the minor or empowered to consent." This provision certainly includes the Division.
[2] Since we uphold the constitutionality of AS 25.23.130(a), and we decide that the statute precludes granting post-adoption visitation rights to biological relatives, we do not address the claim that such a visitation order would be against the boys' best interests.
[3] The grandparents contend that the adoption statute somehow violates equal protection because it does not prescribe a preference for adoptive placement with biological relatives, unlike provisions of the federal Indian Child Welfare Act. 25 U.S.C. § 1915(a) provides that in any adoptive placement of an Indian child, a preference shall be given to placement with "a member of the child's extended family." They emphasize that they would be entitled to an adoptive placement preference if they and the boys were Native Americans. Thus, since they are not Natives, the grandparents contend that they are being denied equal protection because AS 25.23.130 does not provide a preference for adoptive placement with blood relatives. However, no authority supports the proposition that a general state statute, applicable to Natives and non-Natives alike, must mirror a federal statute specifically applicable only to Native Americans. We reject this frivolous argument.
[4] AS 25.23.130(a) provides that:

A final decree of adoption, whether issued by a court of this state or of any other state, has the following effect as to matters within the jurisidiction or before a court of this state:
(1) except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the natural parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and the natural parents and other relatives of the adopted person, so that the adopted person thereafter is a stranger to the former relatives for all purposes including inheritance, unless the decree of adoption specifically provides for continuation of inheritance rights ...; and
(2) to create the relationship of parent and child between petitioner and the adopted person, as if the adopted person were a legitimate blood descendant of the petitioner, for all purposes including inheritance and applicability of statutes, documents, and instruments, whether executed before or after the adoption is decreed, which do not expressly exclude an adopted person from their operation or effect.
[5] The Kansas adoption statute is similar to the Alaska adoption statute now before us. The Kansas statute provided in part that:

When adopted, said child shall be entitled to the same rights of person and property as a natural child of the person thus adopting the child. The person so adopting such child shall be entitled to exercise all the rights of a natural parent and be subject to all the liabilities of that relation. Upon such adoption all the rights of natural parents to the adopted child, including their right to inherit from such child, shall cease, except the rights of a natural parent who is the spouse of the adopting parent.
Browning, 524 P.2d at 1139 (quoting Kan. Stat. Ann. § 59-2103 (1973)).
[6] AS 25.24.150(a) (the "Grandparents' Visitation" statute) provides for such visitation in custody cases:

In an action for divorce or for legal separation or for placement of a child when one or both parents have died, the court may, if it has jurisdiction under AS 25.30.020, and is an appropriate forum under AS 25.30.050 and 25.30.060, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of a child of the marriage, make, modify, or vacate an order for the custody of or visitation with the minor child that may seem necessary or proper, including an order that provides for visitation by a grandparent or other person if that is in the best interests of the child.
Grandparental visitation statutes vary with respect to the categories of persons granted rights, and courts differ widely on the effect of a thirdparty adoption on a grandparent's right to visitation. See Note, Visitation Rights for Natural Parents After Stepparent Adoption, 1 Alaska L.Rev. 319, 325-26 (1984).
[7] This is also the view of various commentators. See e.g., Note, Grandparents' Statutory Visitation Rights and the Rights of Adoptive Parents, 49 Brooklyn L.Rev. 149 (1982); Note, Visitation After Adoption: In The Best Interests Of The Child, 59 N.Y.U.L.Rev. 633 (1984).
[8] Some courts have taken such an approach. For instance, in People ex rel. Sibley v. Sheppard, 429 N.E.2d 1049 (N.Y. 1981), the New York Court of Appeals was confronted with a comparable "conflict" between a standard adoption statute and a "grandparents' visitation rights" statute. The Sibley court concluded that no such conflict existed, reasoning that:

The Legislature, presumed to know what statutes are in effect when it enacts new laws, must have been aware of [the adoption statute] when it enacted [the grandparents' visitation statute] and intended each to have full effect... .
Id. 445 N.Y.S.2d at 422, 429 N.E.2d at 1051. The court observed that the language of the grandparents' visitation did not exclude "custody obtained through adoption." Id.
[9] In Matter of Adoption of Gardiner, 287 N.W.2d 555, 558 (Iowa 1980), the Iowa Supreme Court recognized this possibility: "Because we are unable to conclude with assurance that a case could not arise in which visitation with a natural grandparent, although against the wishes of the adoptive parent, would ever be in the best interest of the child, we decline to base our decision on that ground."
[10] Accordingly, we find that the Division may not condition its consent to the foster parents' adoption on the court's granting such visitation to the grandparents.
[11] The foster parents did not express any objection to the consolidation at that time. Instead, they later argued that the grandparents lacked standing.
[12] Judge Hodges also stated that he would allow the grandparents' attorney "to be present at the hearing; not to ask questions unless the parties' consent to her asking questions... ." At the pretrial conference the judge had stated, with reference to the grandparents: "They're in this proceeding, at least to this point in time... ."

Judge Hodges had previously expressed doubts as to whether he agreed with Judge Van Hoomissen's consolidation and preliminary determination that the foster parents' petition was the primary matter before the court.
[13] The adoption statute does not provide that the court may preliminarily accord one adoption petition a procedural preference over a competing petition. However, given that the grandparents lacked the biological parents' consents, their petition was deficient on its face.