**Thomas G. JOSEPH and John G. Joseph, Appellants,**

v.

**Frank T. JONES and Donald Freeman, Appellees.**

No. 4803.

Supreme Court of Alaska.

Feb. 5, 1982.

*Dekreon*, 526 P.2d 325, 328 (Alaska 1974); *Merrill v. Merrill*, 368 P.2d 546, 548 (Alaska 1962).

Elizabeth I. Johnson, Anchorage, for appellants.

Brent M. Wadsworth, Wadsworth, Stanley & Yerbich, Anchorage, for appellee Jones.

Paul Waggoner, Biss & Holmes, Anchorage, for appellee Freeman.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and VAN HOOMISSEN, Superior Court Judge.*

OPINION

BURKE, Justice.

This appeal arises from a dispute over liability for excavation of a basement for a four-plex.

* Van Hoomissen, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

Thomas Joseph, a building contractor, was employed by an Anchorage developer and contractor, Donald Freeman, in several building projects. Freeman owed Joseph a substantial sum of money as a result of this employment. In the summer or fall of 1976 they discussed a method of reducing this debt, whereby Freeman would convey a building lot that he owned to Joseph.

Joseph and his father, John Joseph, looked over a number of lots in Freeman's Donna Lou subdivision and eventually selected Lot 1 of Block 2. Because they were unable to obtain financing to build at the time, it was agreed with Freeman that the Josephs would begin construction of a four-plex on the lot and, if they were still unable to obtain financing, Freeman would "take it over" and pay them for their work.

Frank Jones and his crew excavated the basement for the four-plex, a job that took longer than expected because of the lot's slope. Jones' bill for the excavation work was not paid, however, because the Josephs and Freeman disagree as to who had contracted with Jones.

The Josephs completed construction of the four-plex in mid-1977 and sought to obtain permanent financing. The required survey of the property revealed that the four-plex had been built in the wrong location, and that it encroached on an adjacent lot, owned by Freeman. No agreement to adjust the lot lines was reached, and the Josephs were forced to move the building to a proper location.

Jones filed suit against Freeman and Tom Joseph to recover the amount of his bill, $11,927.50. The defendants denied liability, and Joseph cross-claimed against Freeman, stating that Jones' claim constituted an encumbrance on the property and therefore breached a covenant of the warranty deed Freeman had given Joseph. Joseph also sought recovery from Freeman for the cost of relocating the building.

When Freeman began construction of a retaining wall between the two lots, the Josephs filed a new complaint seeking an injunction against construction of the wall. Freeman counterclaimed for the cost of constructing the wall, claiming it was necessary because the Josephs deprived his lot of lateral support. This litigation was consolidated, on the Josephs' motion, with that arising from Jones' complaint. On appeal, the scope of the litigation over the retaining wall has been limited to Freeman's counterclaim against the Josephs, as the trial court allowed construction of the wall under modified plans submitted by Freeman.

A jury was requested for all disputed claims but the one made by Jones against Freeman and Joseph. With respect to the latter claim, the court found in favor of Freeman and, after Joseph put on his defense, ruled that Joseph was liable for the full amount of Jones' bill.

Joseph's claim that Jones' bill constituted an encumbrance on his title, for which Freeman was liable, was found by the court to depend upon a finding that a contract between Jones and Freeman existed. Since the court, instead, found a contract between Joseph and Jones, it refused to submit Joseph's claim against Freeman to the jury.

The court also directed a verdict against Joseph on the issue of liability for the mislocation of the four-plex.

The final claim, for deprivation of lateral support, went to the jury with instructions that the Josephs' liability was not in dispute, and that they were to determine only the amount of damages. Although Freeman put on evidence that the wall cost over $15,000, the jury awarded him only $5,000.

In this appeal, the Josephs [1] challenge all of these rulings as well as the court's award of attorney's fees to Freeman and Jones.

## I

As Joseph necessarily concedes, our review of the trial court's findings of fact

---

1. John Joseph is a party only to the lateral support claim. Appellants are therefore referred to in the singular, except in part V of the

opinion, which discusses the lateral support issue.

with respect to Jones' claim is governed by Civil Rule 52(a), since that claim was tried by the court without a jury. We have repeatedly stated that in order to be clearly erroneous under Rule 52(a), a finding must leave "the court with the definite and firm conviction on the entire record that a mistake has been made." *Cousineau v. Walker*, 613 P.2d 608, 612 (Alaska 1980).

Joseph contends that the trial court's finding that he had contracted with Jones cannot be upheld on a theory of either an implied-in-fact contract, or one implied-in-law. He ignores the most obvious reading of the trial court's findings—that there was an express contract between the two.

The court's conclusion was that Jones "had a contract with Mr. Joseph to excavate a hole. It was a time and material contract. There was no set amount." To support these findings as indicating an express agreement, the parties must have arrived "at their agreement by words, either oral or written." *Martens v. Metzgar*, 524 P.2d 666, 671 n.6 (Alaska 1974) (citations omitted). Here, there was testimony that Jones met with Joseph before the excavation started, visited the site with him, and that Joseph then asked Jones when he could start work. There is also evidence that the Josephs directed the excavation work, and told Jones to return a second time to continue digging.

■ Such evidence, we believe, was sufficient to support the court's finding of an express contract between Joseph and Jones.

Joseph asks us to reject this evidence in favor of the alternate explanation of the circumstances put forth by him. These conflicts were for the trial court to resolve, and we are not persuaded that its resolution was clearly erroneous. Neither are we convinced that the documentary evidence adduced by Joseph compels acceptance of his position.[2]

## II

The trial court stated, "There's been no testimony to controvert the fact that the amount of effort which Mr. Jones stated in his bills was expended, was in fact expended." However, Joseph did present testimony that Jones could not have been working on the excavation on December 2 and 3, 1977, the last two days for which payment was sought, as that time was used by his crew to put together the forms used to set the concrete for the foundation. Again we must determine whether the court's finding is clearly erroneous.

Jones' claim to be paid for these two days rests on his testimony that he was working on the excavation at these times, on his bookkeeper's notation on the December 4 timecard that the crew had switched jobs, and on Jones' testimony that he also constructed an access road for supplies next to the four-plex. It is unchallenged, however, that concrete was poured on December 4, and no one has suggested that it would have taken less than two of Anchorage's short winter days to place the forms.

■ As all parties agree that no excavation was possible while the forms were being placed, we would be compelled to set aside the lower court's decision if it rested solely on the claim that excavation was continuing. However, the court's decision is supported by the testimony that other

2. Part of the documentary evidence was a lien claim filed by Jones, which states that the lien is claimed for work done "at the specific instance and request of DON FREEMAN." The claim also names Tom Joseph as the purchaser from Freeman. The lien was not filed during the statutory period, and this count of Jones' complaint was dismissed by him.

The Josephs argue that the claim should be viewed as a conclusive admission by Jones that his contract was with Freeman. However, while a lien claim does partake of judicial elements, it is not "a formal act, done in the course of judicial proceedings, which waives or dispenses with the production of evidence, by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true." IV J. Wigmore, Evidence § 1059, at 27 (Chadbourn rev. ed. 1972). *See also* C. McCormick, Law of Evidence § 262, at 630 (2d ed. 1972). The lien is thus not a judicial admission but an evidentiary one, and the trier of fact was free to consider other evidence along with it. Jones' testimony was that he filed the claim against Freeman because he thought Freeman was the owner.

work was done at the site and that the crew did not switch jobs until December 4. Given the conflict in the evidence as to whether this was the case we have no basis upon which to conclude that the court's decision to believe Jones' evidence was incorrect.

### III

In his cross-claim, Joseph claimed that Jones' bill constituted an encumbrance on the title to the four-plex lot, and that Freeman was therefore liable for breach of the warranty deed covenant against encumbrances. The claim is based on a purported agreement by Freeman to give Joseph an excavated lot, followed by a purported contract between Freeman and Jones to do the excavation, and a resulting encumbrance on the Joseph property when Freeman did not pay Jones' bill.[3]

■ Since this theory depended upon the existence of a contract between Jones and Freeman, contrary to the court's finding, it is of no use to Joseph. Joseph, rather than Freeman, was found to have contracted with Jones. Thus, the court did not err in refusing to submit this theory of recovery to the jury.[4]

### IV

■ Joseph next argues that Freeman is liable for the cost of moving the four-plex to its proper location on the lot, because the encroachment constituted an encumbrance on the title to the land. As this position represents a complete turnabout from his argument at trial that Freeman was liable because he employed the surveyor who purportedly caused the error, we decline to consider the argument. Joseph also waived

review of the court's ruling on his trial theory by failing to present it in his opening brief on appeal. While the reply brief does mention the point, that brief may not raise new contentions. Alaska R.App.P. 212(c)(3); *see, Wetzler v. Wetzler*, 570 P.2d 741, 742 n.2 (Alaska 1977); *Sloan v. Atlantic Richfield Co.*, 546 P.2d 568, 569 (Alaska 1976); *Austin v. Fulton*, 498 P.2d 702, 704 (Alaska 1972).

### V

The excavation for the four-plex on the Josephs' lot mistakenly extended onto the adjacent lot. Freeman determined that a retaining wall would therefore be necessary to allow planned construction on the adjacent lot. Freeman's counterclaim sought damages for deprivation of lateral support.

At trial, the Josephs attempted to show that Freeman first excavated his lot to the level of the Josephs' property, and then built it up again; they argued that the retaining wall was, therefore, unnecessary, as Freeman could have built on his lot while it was still at the same elevation as that of the Josephs.

The trial court ruled that the Josephs were liable for the deprivation of lateral support and instructed the jury that, "The measure of damages in a trespass action for removal of lateral support by an adjacent landowner is the cost of restoring the lateral support to the property." The Josephs argue on appeal that, as a matter of law, they could not be liable for deprivation of lateral support.

The Josephs rely on the principle that a landowner owes a duty of lateral support

---

**3.** Counsel for Joseph explained his theory to the lower court this way:

Your Honor could rule Jones contracted with Freeman, but as the ultimate beneficiary of that contract . . . [Joseph is] stuck with the bill, because it improved the value of something . . . [Joseph is] now in possession of, and if you do it that way, then we are entitled to our crossover claim because it was Freeman's contract. Which we, when we took title, didn't know about. And would not have negotiated along those terms had we known we were ultimately going to pay his

excavator bill. . . . If you ruled it improved your land, there was a preexisting contract that antedated your deed, and Mr. Jones is entitled to be compensated, you pay Jones, but you're entitled to get it back from Mr. Freeman. So I don't think we have to withdraw that claim. But I think that's the only way we could use it.

**4.** Freeman's purported promise to furnish an excavated lot was not pleaded by the Josephs as a basis for recovery of Jones' bill.

only if land is maintained in its natural state, or if it would have subsided even if it was in its natural condition. *See* Restatement (Second) of Torts, § 817, Comments c–f (1979). However, in this instance, the Josephs' liability arises because of the trespass and not as a mere adjoining landowner owing a duty of lateral support. The prefatory note to the Restatement's discussion of lateral support specifically notes that it does not state the liability of a trespasser. Restatement (Second) of Torts, Ch. 39, Scope and Introductory Note, at 62 (1979). A trespasser's liability is for all the physical harm to the landowner, "irrespective of whether his conduct is such as would subject him to liability were he not a trespasser." Restatement (Second) of Torts, § 162 (1965).

■ We thus conclude that the Josephs could still be found liable to Freeman even if he had levelled his land and then built it up again. The pertinent question is whether the Josephs indeed deprived Freeman's lot of lateral support. The Josephs argued to the jury that they did not, and offered a photograph that supports their position. There was testimony that the photograph did not accurately depict the scene. The court properly placed the burden on Freeman to show that he had been injured by the trespass, and the jury found that he had met that burden by returning a verdict in his favor. We find no merit to the Josephs' position.

## VI

The last issue in this appeal is the trial court's award of attorney's fees, $4,000 to Jones and $8,000 to Freeman.

"The determination of attorney's fees is committed to the discretion of the trial court and reviewable on appeal only for abuse. That abuse, is present only where it appears the trial court's determination was manifestly unreasonable, arbitrary or designed for purpose rather than justly deserved compensation." *Alaska State Bank v. General Ins. Co.*, 579 P.2d 1362, 1370 (Alaska 1978).

■ Here, the award to Jones is greater than that calculated in Civil Rule 82(a)(1), and totals about sixty-eight percent of his actual attorney's fees. The trial court did state reasons for its non adherence to the schedule. *See Haskins v. Shelden*, 558 P.2d 487, 496 (Alaska 1976). We think this award was not manifestly unreasonable in light of the fact that Freeman and Joseph had made Jones' legitimate claim the battleground for their own disputes.

■ The award to Freeman is greater than Freeman's recovery of $5,000, but this is not dispositive, as under Civil Rule 82(a)(2) the court is not bound by the schedule of fees where "the money judgment is not an accurate criteri[on] for determining the fee." Joseph had sought compensatory damages from Freeman in excess of $63,-000, plus punitive damages, and Freeman's counsel stated that his bill for services was $15,486.33. The court's award of slightly over half this amount is not manifestly unreasonable.

The judgment of the trial court is AFFIRMED.

MATTHEWS, Justice, joined by RABINOWITZ, Chief Justice, dissenting in part.

I disagree with part II of the opinion. The trial court stated:

There's been no testimony to controvert the fact that the amount of effort which Mr. Jones stated in his bills was, in fact, expended.

As the majority opinion points out, this finding was incorrect since there was clear and plausible testimony that Jones could not have been working on the excavation on December 2 and 3, 1977, two of the days for which payment was sought. Since it is evident from the court's finding that this testimony was not considered, I would remand for reconsideration of this point.