This is a child visitation case.
The paternal grandmother of the minor child petitioned the Circuit Court of Colbert County to award her visitation rights with the child.
Following an ore tenus hearing, the trial court granted the grandmother certain visitation rights.
The record reflects that the natural parents of this child were divorced in October 1983, approximately fifteen months after they were married. As part of the divorce decree, the trial court awarded sole custody of the child to the mother, with monthly visitation being granted to the father.
In January 1986 the paternal grandmother petitioned the trial court for visitation rights pursuant to Ala. Code (1975), §30-3-4 (1983 Repl.Vol.).
The trial court granted the paternal grandmother visitation rights with the child in May 1986.
The child's mother has remarried, and in June 1987 the stepfather adopted the child. The adoption proceeding was finalized with the voluntary consent of the child's natural father.
In July 1987, after the child's mother had denied the paternal grandmother's visitation rights, the paternal grandmother petitioned the trial court to interpret its prior decree which had granted certain visitation rights and to order the child's mother to comply therewith.
The child's mother, in answer to this "petition to interpret," alleged that the paternal grandmother had failed to visit the child on several occasions. The child's mother also filed a cross-petition, asking the court to terminate the paternal grandmother's previously granted visitation rights, stating that the paternal grandmother was no longer a resident of the State of Alabama and that the child's mother feared the child would be removed from Alabama.
In November 1987 the trial court, citing Ala. Code (1975), § 30-3-4 (1983 Repl.Vol.), and § 26-10-5(b) (1986 Repl.Vol.), as authority, granted the paternal grandmother visitation rights.
The child's mother and adoptive father appeal. We note that the paternal grandmother has not favored this court with a brief. We reverse and remand.
At the outset we note that grandparents, under common law principles, lacked any legal right to visitation and communication with their grandchildren if such visitation was forbidden by the parents. Ex parte Bronstein,434 So.2d 780, 782 (Ala. 1983). Thus, if a grandparent has any legal right to visitation with a grandchild, it must be derived from a legislative grant.
The Alabama Legislature has, under limited circumstances, abrogated this common law principle and created a right of visitation for grandparents. We quote the language of Ala. Code (1975), § 30-3-4:
 "At the discretion of the court, visitation rights for grandparents of minor grandchildren shall be granted in the following cases:
 "(a) Divorce proceedings, whether granted previously or subsequently to February 28, 1983; and
 "(b) Situations concerning the death of a parent related by blood to the grandparents."
Thus, in order for a grandparent to gain visitation rights, the statutory provision must be adhered to strictly. *Page 27 
Factually, it is clear that this case, unlike Snipes v.Carr, 526 So.2d 591 (Ala.Civ.App. 1988), does not concern the death of a parent related by blood to the grandparents.
Additionally, in Snipes, the relationship between the parents of the child, a natural mother and adoptive father, and the natural paternal grandparents was "amiable."Snipes, 526 So.2d at 592. In the case before us, the relationship among the natural mother and adoptive father and the paternal grandmother is strained and anything but amiable.
It is also questionable as to whether subsection (a) of §30-3-4 (Ala. Code 1975), concerning "divorce proceedings," applies in the present case. The paternal grandmother first petitioned for visitation rights in January 1986, almost three years after the child's natural mother and father were divorced. Thus, it could be argued that the grant of visitation rights to the paternal grandmother in May 1986 was not in any way a part, or modification, of the 1983 divorce decree.
In Snipes, affirming the trial court's order granting visitation rights to the grandparents, we stated the following:
 "We should not be understood as saying that, in a case of this nature where a child has been adopted by his stepfather, visitation rights should always be given to the natural grandparents. Under different facts than those now before us, adoption by the wife's new husband — the child's stepfather — would certainly be an important factor in the trial court's determination of whether to award visitation rights to the grandparents."
Snipes, 526 So.2d at 593 (emphasis supplied).
In Bronstein, the supreme court was confronted with a similar situation, involving the construction of Ala. Code (1975), § 30-3-3, which governed the award of visitation rights to grandparents prior to being repealed and superseded by Ala. Code (1975), § 30-3-4. The supreme court stated that grandparent visitation, when against the wishes of the adoptive parents, would never be in the best interests of the child and that visitation rights of grandparents are derived from the rights of biological parents and, therefore, when an adoption decree terminates parents' rights, the rights of grandparents are also terminated. Bronstein, 434 So.2d at 783.See In the Matter of the Adoption of Gardiner,287 N.W.2d 555 (Iowa 1980).
In any event, the circumstances of this case, including the fact that the natural father is alive, has had little contact with the child, voluntarily consented to the adoption of his child, and, most importantly, that the natural mother and adoptive father adamantly oppose any visitation rights being granted to the paternal grandmother, warrant a conclusion that the trial court abused its discretion in awarding the paternal grandmother visitation.
This case is due to be reversed and remanded for entry of a judgment not inconsistent with this opinion.
REVERSED AND REMANDED.
BRADLEY, P.J., and INGRAM, J., concur.