On September 9, 1994, Julian Weathers and Louie Weathers ("the paternal grandparents") filed a petition in the Circuit Court of Limestone County to modify the divorce judgment between their son, Joseph Edward Weathers ("the natural father"), and their former daughter-in-law, Paula Gay McCrary Weathers Compton ("the mother"). In that petition, the paternal grandparents asked the trial court to award them visitation rights with their grandchild, born during the marriage of the mother and the natural father. Following an ore tenus hearing, the trial court entered an order on April 8, 1998, denying the paternal grandparents' request for visitation rights. The paternal grandparents appealed.
The record reflects that the natural father and the mother of the minor child were married on September 6, 1988, and were divorced by the Circuit Court of Limestone County on September 12, 1989. In its divorce judgment, the trial court awarded the mother the care, custody, and control of the child and granted the natural father visitation rights. The child was approximately six months old when the court entered the divorce judgment.
The natural father's visits with the child routinely took place at the paternal grandparents' home. During these visits, which occurred on alternate weekends, the paternal grandparents picked the child up at the mother's home and took him to their home.
The mother remarried on June 6, 1992. On November 16, 1993, with the consent of the natural father, the mother's new husband adopted the child. However, even after the adoption, the paternal grandparents continued to visit the child for about six hours every two weeks, usually on Saturdays. The paternal grandparents' last visit with the child took place on January 1, 1994. Soon after that date, the mother and the adoptive father notified the paternal grandparents that they would no longer permit the paternal grandparents to visit with the child.
On appeal, the paternal grandparents argue that the trial court erred when it held, "as a matter of law," that it would not be in the best interest of the child to grant them visitation rights because the mother and the adoptive father objected to the grandparents' visiting the child. Instead, the paternal grandparents argue, the trial court should have made a factual determination as to whether granting them visitation rights would serve the best interest of the child.
When the trial court hears evidence presented ore tenus, its findings of fact are presumed correct; however, no presumption of correctness exists when the trial court improperly applies the law to the facts. Allstate Ins. Co. v. Skeleton, 675 So.2d 377,379 (Ala. 1996); and Griggs v. Driftwood Landing, Inc.,620 So.2d 582, 586 (Ala. 1993). Because there are no disputed material facts and this appeal focuses on the application of the law to the facts, no presumption of correctness attaches to the trial court's judgment. See Allstate, supra. Therefore, we review de novo the application of the law to the facts of this case. Seeid.; Beavers v. County of Walker, 645 So.2d 1365, 1373 (Ala. 1994); Lake Forest Property Owners' Ass'n v. Smith,571 So.2d 1047, 1049 (Ala. 1990).
Under the principles of the common law, grandparents possessed no legal right of visitation with their grandchildren if the parents forbade such visitation. EX parte Bronstein,434 So.2d 780, 782 (Ala. 1983); Loftin v. Smith 590 So.2d 323, 325-26
(Ala.Civ.App. 1991); and Clark v. Leslie, 537 So.2d 25, 26
(Ala.Civ.App. 1988).
In 1980, the Alabama legislature enacted § 30-3-3, Ala. Code 1975, which abrogated this common-law proposition and created a right of visitation for grandparents under limited circumstances when the parents divorce. Section 30-3-3, Ala. Code 1975, provided that "[t]he presiding judge in a divorce *Page 1286 
case involving custody of children. award, at his discretion, visitation the grandparents of such children."
In 1983, the Alabama legislature repealed § 30-3-3 and enacted § 30-3-4, Ala. Code 1975. One aspect of the intent of the legislature in enacting the 1983 statute was to expand "grandparental rights to visitation to include the situation involving the death of one of the grandchild's parents." Mills v.Parker, 549 So.2d 97, 98 (Ala.Civ.App. 1989).
In 1989, the Alabama legislature amended § 30-3-4, Ala. Code 1975, to give grandparents the right to intervene in any divorce action and to file a motion to modify the original divorce judgment solely for visitation rights, the right to move for a finding of contempt when the parents of the child have denied visitation rights, and the right to visitation when the parents of a child unreasonably deny grandparents visitation for a period exceeding 90 days.
In 1995, the Alabama legislature again amended § 30-3-4, Ala. Code 1975. The Alabama legislature made the applicability of the 1995 amendment retroactive to January 1, 1989. 1995 Ala. Acts, Act No. 95-584. Therefore, the 1995 version of § 30-3-4, Ala. Code 1975, applies in this case. The 1995 version of § 30-3-4 states:
 "At the discretion of the court, visitation privileges for grandparents of minor grandchildren shall be granted in any of the following situations:
 "(1) When the parents of the child have filed for a dissolution of their marriage or when they are divorced. A grandparent may intervene in any dissolution action solely on the issue of visitation privileges or may file a petition to modify an original decree of dissolution to seek visitation rights when those rights have not been previously established by the court."
(Emphasis added.)
The legislature's intent in enacting the 1995 version of §30-3-4 was "to provide visitation privileges for grandparents, those privileges presumed to be in the best interest of the child, but the presumption being rebuttable upon the consideration of the court of, may of what is in the best interest of the child." rights to Act No. 95-584.
In Ex parte Bronstein, 434 So.2d 780 (Ala. 1983), our Supreme Court first considered the issue whether natural grandparents who desire to visit their grandchildren may obtain visitation rights when the children's natural mother has subsequently remarried and the natural father has consented to the stepfather's adoption of the children. The supreme court held that the former § 30-3-3
applied only in situations where the court was considering custody matters in a divorce case. Ex parte Bronstein, 434 So.2d at 783. The Supreme Court further stated:
 "Adoption, like birth, creates legal relationships under which adoptive parents gain certain rights which pre-empt any visitation rights by natural parents or grandparents. Consequently, we hold that because there is a societal importance in the establishment of a permanent and stable family unit, see Pendergrass v. Watkins, 383 So.2d 861, 855 (Ala.Civ.App. 1980), an adoption of a child must necessarily sever all former family bonds and relationships. The courts are not free, therefore, to intervene on behalf of relatives who seek visitation, especially when the child's adoptive parents have decided not to permit visitation."
Ex parte Bronstein, 434 So.2d at 783-84.
In 1984, the year after our supreme court issued its opinion inBronstein, the legislature amended § 26-10-5, Ala. Code 1975, to acknowledge an exception to the general rule that an adoption order that terminates the rights of the natural parents also terminates the rights of the natural grandparents. 1984 Ala. Acts, Act No. 84-254. Through the enactment of this statute, the legislature carved out specific circumstances under which the trial court, at its discretion, could award visitation rights to natural grandparents. See Loftin v. Smith, 590 So.2d 323, 326
(Ala.Civ.App. 1991); Snipes v. Carr, 526 So.2d 591, 593
(Ala.Civ.App. 1988).
In 1990, § 26-10A-30, Ala. Code 1975, replaced § 26-10-5
1990 Ala. Acts, Act No. 90-554. Section 26-10A-30 states:
 "Post-adoption visitation rights for the natural grandparents of the adoptee may *Page 1287 
be granted when the adoptee is adopted by a stepparent . . . . Such visitation rights may be maintained or granted at the discretion of the court at any time prior to or after the final order of adoption is entered upon petition by the natural grandparents, if it is in the best interest of the
(Emphasis added.)
In the present case, the trial court stated in its order:
 "This Court in deciding to deny petitioners' visitation rights with the grandchild does not make a factual determination of whether or not granting or denying visitation would be in the best interest of the child. This Court finds that the adoptive parent and the natural mother have expressed that they are against any visitation by the petitioners with the grandchild, and therefore, as a matter of law, the Court reluctantly finds that it would not be in the best interest of the child to have visitation with the petitioners . . . ."
The trial court erred in holding that as a matter of law, the award of visitation rights to the grandparents would not be in the best interest of the minor child. The trial court cited Clarkv. Leslie, 537 So.2d 25 (Ala.Civ.App. 1988), and Ex parteBronstein, supra, as authority for its determination.
However, in Loftin v. Smith, 590 So.2d 323 (Ala.Civ.App. 1991), this court held that the trial court does have discretion in determining whether to grant visitation rights in cases where the natural mother and the adoptive father object to the paternal grandparents's visitation with a minor child.
This court further held in Loftin that the trial court did not abuse its discretion in continuing visitation rights that had been awarded to the paternal grandparents before the remarriage of the mother and the adoption of the children. Loftin, 590 So.2d at 326. Factors this court found important in making this determination were the grandparents' consistent efforts to maintain contact with their grandchildren after the parents had divorced and after their daughter-in-law's remarriage, and the long distances which the grandparents were willing to travel in order to continue these efforts. Loftin, 590 So.2d at 326. InLoftin, the mother contended that the children's continued contact with their paternal grandparents was upsetting to the children, but the trial judge resolved these concerns by conducting a private interview with the oldest child in chambers Id.
Loftin also clarified Clark v. Leslie, supra.Clark contained the following statement, based on the Supreme Court'sBronstein opinion:
 "[Glrandparent visitation, when against the wishes of the adoptive parents, would never be in the best interests of the child and that visitation rights of grandparents are derived from the rights of biological parents and, therefore, when an adoption decree terminates parents' rights, the rights of grandparents are also terminated."
Clark, 537 So.2d at 27, citing Ex parte Bronstein, 434 So.2d at 783. However, "a close reading of Bronstein reveals that our supreme court was only pointing out what an Iowa court had advanced as one of its policy reasons for denying visitation rights to grandparents." Loftin, 590 So.2d at 325. Further, our Supreme court issued Bronstein before the legislature enacted §§ 26-10A-30 and 30-3-4, Ala. Code 1975.
In the present case, we note that the grandparents have consistently strived to maintain a relationship with their grandchild Supportive family relationships are vital t( the growth and development of a child. The trial court must determine, after a careful consideration of all the evidence, whether their continued participation in their grandchild's life after that child has been adopted by his stepfather is a benefit to the child that outweighs any potential detriment.
The judgment is reversed and the case is remanded for the trial court to determine after it reviews all of the evidence and takes additional testimony, if necessary, whether the award of visitation to the grandparents would be in the child's best interest.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES, MONROE, and CRAWLEY, JJ., concur. *Page 1288